UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EVAN EUGENE MOORE, | Case No. 2:19-cv-02108-GMN-BNW |
| Plaintiff, | SCREENING ORDER |
| v. | |
| JERRY HOWELL, *et al.*, | |
| Defendants. | |

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983, and has filed an application to proceed *in forma pauperis* and a motion for appointment of counsel. (ECF Nos. 1, 1-1, 1-3.) The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's civil rights complaint under 28 U.S.C. § 1915A and addresses Plaintiff's motion.

## I.   SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's

claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then

2

1  determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining
2  whether a complaint states a plausible claim for relief . . . [is] a context-specific task that
3  requires the reviewing court to draw on its judicial experience and common sense." *Id.*

4  Finally, all or part of a complaint filed by an incarcerated person may be dismissed
5  *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This
6  includes claims based on legal conclusions that are untenable (e.g., claims against
7  defendants who are immune from suit or claims of infringement of a legal interest which
8  clearly does not exist), as well as claims based on fanciful factual allegations (e.g.,
9  fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989);
10  *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

11  **II.   SCREENING OF COMPLAINT**

12  In the complaint, Plaintiff sues multiple defendants for events that took place while
13  Plaintiff was incarcerated at Southern Desert Correctional Center ("SDCC").  (ECF No. 1-
14  1 at 1.)  Plaintiff sues Defendants Jerry Howell, Arias, Kelly, and J. Ybarra.  (*Id.* at 2-3.)
15  Plaintiff alleges one count and seeks monetary relief.  (*Id.* at 4-17.)

16  The complaint alleges the following:  On June 29, 2019, Plaintiff went to the
17  culinary for work.  (*Id.* at 6.)  Arias conducted a strip search of Plaintiff, requiring him to
18  remove his clothing, lift his penis and testicles, and spread his buttocks to permit a visual
19  inspection.  (*Id.*)  Kelly informed the inmates that the strip search was in response to an
20  inmate filing a PREA complaint.[1]  (*Id.* at 7.)  Kelly stated that the inmates could thank the
21  "guy with the bald head and blue hat" for that strip search and that correctional officers
22  would conduct daily strip searches as a result of the PREA complaint.  (*Id.*)  Ybarra,
23  agreed with Kelly, saying "yea, he's from Oakland California, [and] he did this to you."
24  (*Id.*)  Howell was notified of Arias's improper strip search, but he did nothing to discipline
25  or control Arias.  (*Id.*)

26  Plaintiff was traumatized by the strip search because he was raped by his uncle
27  when he was 11 years old.  (*Id.* at 8.)  Plaintiff sought psychological and physical

28
[1] The Court assumes that PREA refers to the Prison Rape Elimination Act of 2003.

treatment for the trauma of the strip search, and in September 2019, Plaintiff saw Dr. Depry.  (*Id.* at 9.)  Dr. Depry diagnosed Plaintiff with post-traumatic stress disorder.  (*Id.*)  The stress has caused Plaintiff to suffer from a variety of symptoms, including migraines, dizziness, fatigue, chest pain, breaking difficulties, and stomach and digestive issues.  (*Id.*)  Based on these allegations, Plaintiff claims that the Defendants conducted an unreasonable search in violation of his Fourth Amendment rights.[2] (*Id.* at 6.)

Although both convicted prisoners and pretrial detainees retain some Fourth Amendment rights upon commitment to a corrections facility, the Fourth Amendment only prohibits unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979).  "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application."  *Id.* at 559.  In each case, a court must (1) balance the need for the particular search against the invasion of personal rights that the search entails; (2) consider the scope of the particular intrusion; (3) consider the manner in which the search is conducted; (4) consider the justification for initiating the search, and (5) consider the place in which the search is conducted.  *Id.*  Courts also consider the existence of a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the existence of obvious, easy alternatives" as evidence that the regulation "is an 'exaggerated response' to prison concerns."  *Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 973 (9th Cir. 2010) (*citing Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).

Generally, strip searches do not violate the Fourth Amendment rights of prisoners. *See Michenfelder v. Sumner*, 860 F.2d 328, 332-33 (9th Cir. 1988).  However, strip

---

[2] Plaintiff also states that the Defendants violated the Eighth Amendment when listing his causes of action. (ECF No. 1-1 at 6.)  But Plaintiff does not explain the basis of his claim under the Eighth Amendment, and throughout the body of the complaint, he only refers to violations of the Fourth Amendment.  (*Id.* at 6-12.)  As such, it appears that Plaintiff is only bringing a Fourth Amendment claim, and the Court dismisses any Eighth Amendment claim without prejudice.

searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may be unconstitutional. *Id.* at 332.

The Court finds that Plaintiff states a colorable claim under the Fourth Amendment. The Court liberally construes the complaint as alleging that Arias conducted a vindictive strip search of Plaintiff and other inmates in retaliation for another inmate filing a PREA complaint. The strip search was not related to any legitimate penological interest and was only conducted to punish Plaintiff and other inmates for the PREA complaint. Kelly and Ybarra were both present while Arias was conducting the strip search, and they informed the inmates that the strip search was in retaliation for the PREA complaint. Although they knew that the strip search was improper, they did nothing to stop Arias from conducting the improper strip search. These allegations are sufficient to state a colorable claim on screening. This claim will proceed against Defendants Arias, Kelly, and Ybarra.

The Court finds that Plaintiff fails to state a colorable claim against Defendant Howell. Plaintiff alleges that Howell failed to discipline Arias after being informed of the improper strip search. A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Based on the allegations in the complaint, Howell did not know about the improper strip search until after it occurred. As such, Howell could not have prevented the improper strip search. Howell's failure to punish Arias after the strip search does not make him liable for a strip search that he was not aware of. As such, the complaint does not state

a colorable claim against Howell, and the Court dismisses Howell from this action without prejudice.

**III.   MOTION FOR APPOINTMENT OF COUNSEL**

Plaintiff has filed a motion for appointment of counsel.  (ECF No. 1-3.)  A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil rights claims.  *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).  Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel."  However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances."  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action).  "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved."  *Id.*  "Neither of these considerations is dispositive and instead must be viewed together."  *Id.*  In the instant case, the Court does not find exceptional circumstances that warrant the appointment of counsel.  The Court denies the motion for appointment of counsel without prejudice.

**IV.   CONCLUSION**

For the foregoing reasons, it is ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Clerk of the Court file Plaintiff's complaint (ECF No. 1-1) and send Plaintiff a courtesy copy of the complaint.

It is further ordered that Plaintiff's claim of an unreasonable search under the Fourth Amendment will proceed against Defendants Arias, Kelly, and Ybarra.

It is further ordered that Plaintiff's Eighth Amendment claim is dismissed without prejudice.

It is further ordered that Defendant Howell is dismissed from the entirety of the case without prejudice.

It is further ordered that Plaintiff's motion for appointment of counsel (ECF No. 1-

3) is denied without prejudice.

It is further ordered that, given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for 90 days to allow Plaintiff and Defendant(s) an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

It is further ordered that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Plaintiff will be required to pay the full $350.00 filing fee. This fee cannot be waived. If Plaintiff is allowed to proceed in forma pauperis, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed in forma pauperis, the $350.00 will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation"

7

on or before 21 days from the date of this order. The responding party will have seven days to file a response. No reply may be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

The Clerk of Court is directed to electronically serve a copy of this order, and a copy of Plaintiff's Complaint, on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Defendants for the purpose of settlement. No defenses or objections, including lack of service, will be waived as a result of the filing of the limited notice of appearance.

DATED THIS _2_ day of December 2020.

Gloria M. Navarro, Judge
United States District Court

8

1
2
3
4

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

5
6
7
8
9

| | |
|---|---|
| EVAN EUGENE MOORE,<br><br>                                    Plaintiff,<br><br>        v.<br><br>JERRY HOWELL, *et al.*,<br><br>                                    Defendants. | Case No. 2:19-cv-02108-GMN-BNW<br><br>REPORT OF ATTORNEY GENERAL<br>RE: RESULTS OF 90-DAY STAY |

10
11

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

12
13
14
15
16
17
18

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

19
20
21
22
23
24
25
26
27
28

///
///
///
///
///
///
///
///
///
///

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

_____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

_____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

\* \* \* \* \*

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

_____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

_____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____        _____
                              Print                                        Signature

Address:        _____        Phone:

                                                                    _____

                _____        Email:

                                                                    _____